IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHARLOTTE CARROLL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:25-cv-127-X-BN |
| | § | |
| VIVID SEATS, LLC, | § | |
| | § | |
| Defendant. | § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Defendant Vivid Seats, LLC ("Vivid"), invoking the Court's federal question subject-matter jurisdiction, removed a lawsuit that Plaintiff Charlotte Carroll filed *pro se* in a Dallas County, Texas state court. *See* Dkt. No. 1.

United States District Judge Brantley Starr referred the removed lawsuit to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference.

Vivid moves the Court to stay this case and compel arbitration of Carroll's claims, for discrimination, retaliation, and wrongful termination, in violation of the Americans with Disabilities Act ("ADA") and Texas law. *See* Dkt. Nos. 9-11. Carroll opposes Vivid's motion through various filings, including a motion to strike the motion [Dkt. No. 12]. And Carroll moves for leave to amend her complaint [Dkt. No. 18] and for expedited consideration of the pending motions [Dkt. No. 23].

For the following reasons, the Court should grant the motions to expedite and stay and compel arbitration, deny the motions to strike and for leave to amend, retain

the case, refer it to arbitration, and administratively close it pending the outcome of arbitration.

## Preliminary Matters

The Court should deny Carroll's motion to strike the motion to compel arbitration [Dkt. No. 12], as there is no basis to strike a motion. *See* FED. R. CIV. P. 12(f); *SEC v. Faulkner*, No. 3:16-cv-1735-D, 2019 WL 2515000, at *1 (N.D. Tex. June 18, 2019); *Groden v. Allen*, No. 3:03-cv-1685-D, 2009 WL 1437834, at *3 (N.D. Tex. May 22, 2009).

And, because the undersigned is now addressing all pending motions, the Court should grant Carroll's motion to expedite [Dkt. No. 23].

## Legal Standards

"[A]rbitration is a matter of contract," so "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960).

And the Federal Arbitration Act ("FAA") provides that a written agreement to arbitrate in a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

So a party may bring a motion to compel arbitration under the FAA, and a court must direct parties to arbitration if it is "satisfied that the making of the agreement for arbitration ... is not in issue." *Id.* § 4.

And, under the "two-step process" to "analyze whether a party can be

compelled to arbitrate," courts must ask first whether "'the party has agreed to arbitrate the dispute.'" *Janvey v. Alguire*, 847 F.3d 231, 240 (5th Cir. 2017) (per curiam) (quoting *Sherer v. Green Tree Serv. L.L.C.*, 548 F.3d 379, 381 (5th Cir. 2008)); *see also Cigniti Techs. Inc. v. Govinsadamy*, No. 3:23-cv-2460-L, 2024 WL 4329021, at *2 (N.D. Tex. Aug. 7, 2024) ("When determining a motion to compel arbitration, '[e]nforcement of an arbitration agreement involves two analytical steps. The first is contract formation – whether the parties entered into any arbitration agreement at all.'" (quoting *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016))), *rec. accepted*, 2024 WL 4360144 (N.D. Tex. Sept. 30, 2024).

And, so, "the only issue at the first step is whether there is any agreement to arbitrate any set of claims. Determining whether that agreement covers the claim at bar is the second step." *Kubala*, 830 F.3d at 202.

"When deciding whether the parties agreed to arbitrate the dispute in question, courts generally … should apply ordinary state-law principles that govern the formation of contracts." *Polyflow, L.L.C. v. Specialty RTP, L.L.C.*, 993 F.3d 295, 302-03 (5th Cir. 2021).

And, while courts have often held that they "do so against the backdrop of a strong presumption in favor of arbitration," *Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 279 (5th Cir. 2019) (footnote omitted), despite the "frequent use of that phrase," "the FAA's 'policy favoring arbitration' … is to make 'arbitration agreements as enforceable as other contracts, but not more so,'" *Morgan v. Sundance*, 596 U.S. 411, 418 (2002) (quoting *Prima Paint Corp. v. Flood & Conklin*

*Mfg. Co.*, 388 U.S. 395, 404, n.12 (1967)).

"Accordingly, arbitration provisions within a contract are on equal footing with other provisions and obtain no talismanic effect from the FAA." *Twn. of Vinson v. Certain Underwriters at Lloyds London*, 706 F. Supp. 3d 602, 608 (W.D. La. 2023). That is, *Morgan* "clipped the wings of the oft quoted 'strong federal policy favoring arbitration' created by the FAA, explaining that the FAA's policy only makes arbitration agreements as enforceable as other contracts, but not more so, and does not permit federal courts to devise novel rules to favor arbitration over litigation." *Id.*

But, even prior to *Morgan*'s clarification, any policy favoring arbitration did "not apply to the initial determination whether there is a valid agreement to arbitrate." *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004).

And, while "[o]rdinarily both steps are questions for the court," "where the arbitration agreement contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the analysis changes." *Kubala*, 830 F.3d at 201 (cleaned up).

That is, "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy," and "[a]n agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69, 70 (2010) (cleaned up).

"Delegation clauses are enforceable and transfer the court's power to decide arbitrability questions to the arbitrator. Thus, a valid delegation clause requires the court to refer a claim to arbitration to allow the arbitrator to decide gateway arbitrability issues." *Kubala*, 830 F.3d at 202.

And, so, "[i]f a party opposing arbitration contests the validity of the contract, that goes to the arbitrator; if the party contests the existence of a contract, it stays with" the court. *Lopez v. Cintas Corp.*, 47 F.4th 428, 433 (5th Cir. 2022).

Under this framework, "if the party seeking arbitration points to a purported delegation clause, the court's analysis is limited. It performs the first step – an analysis of contract formation – as it always does." *Kubala*, 830 F.3d at 202 (cleaned up). That is, "[a]s always, [the court] ask[s] if the parties entered into a valid agreement." *Archer*, 935 F.3d at 279.

"If they did," the court must "turn to the delegation clause," and "the only question, after finding that there is in fact a valid agreement, is whether the purported delegation clause is in fact a delegation clause – that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated." *Archer*, 935 F.3d at 279 (cleaned up); *Kubala*, 830 F.3d at 202 (cleaned up). "When determining that intent, [c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." *Archer*, 935 F.3d at 279 (cleaned up).

"If there is a valid delegation, the court must grant the motion to compel," *id.* (cleaned up), because "the arbitrator decides whether the claim is arbitrable," *Matter*

*of Willis*, 944 F.3d 577, 579-80 (5th Cir. 2019) (cleaned up); *accord Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) ("To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists. *See* 9 U.S.C. § 2. But if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue.").

But, if the agreement does not contain a valid delegation clause, and the court therefore has "the power to decide arbitrability," the court "must perform the ordinary arbitrability analysis" and address the scope of the arbitration agreement and whether the claim or claims are covered. *Archer*, 935 F.3d at 282; *Kubala*, 830 F.3d at 203.

And, then, "[i]f the court finds that the parties agreed to arbitrate, the court typically must consider whether any federal statute or policy renders the claims nonarbitrable." *Polyflow*, 993 F.3d at 302 (cleaned up).

## Analysis

When Carroll began her employment with Vivid as an Order Fulfillment Associate in August 2022, she received and electronically signed, on August 23, 2022, an Employment and Restrictive Covenant Agreement containing a mutual arbitration agreement (the "Agreement"). *See* Dkt. No. 11 at 5-8; *see also, e.g., id.* at 20 ("Employee understands, agrees, and consents to this binding arbitration provision, and Employee and the Company hereby each expressly waive the right to trial by jury of any claims arising out of Employment with the Company. By initialing

below, Employee acknowledges that Employee has read, understands, agrees and consents to the binding arbitration provision, including the class action waiver." (electronically initialed by Carroll; emphasis omitted)).

The Agreement requires Carroll to submit all employment-related disputes with Vivid to arbitration:

> Both the Company and Employee hereby agree that any claim, dispute, and/or controversy that Employee may have against the Company (or its owners, directors, officers, managers, employees, agents, insurers and parties affiliated with its employee benefit and health plans), or that the Company may have against Employee, arising from, related to, or having any relationship or connection whatsoever to the Employment, shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act (9 U.S.C. §§ 1, *et seq*.) in conformity with the Federal Rules of Civil Procedure. Included within the scope of this Agreement are all disputes including, but not limited to, any claims alleging employment discrimination, harassment, hostile environment, retaliation, whistleblower protection, wrongful discharge, constructive discharge, failure to grant leave, failure to reinstate, failure to accommodate, tortious conduct, breach of contract, and/or any other claims Employee may have against the Company for any exemption misclassification, unpaid wages or overtime pay, benefits, payments, bonuses, commissions, vacation pay, leave pay, workforce reduction payments, costs or expenses, emotional distress, pain and suffering, or other alleged damages arising out of the Employment or termination. Also included are any claims based on or arising under Title VII, 42 USC § 1981, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Family and Medical Leave Act, the Fair Labor Standards Act, Sarbanes-Oxley, all as amended, or any other state or federal law or regulation, equitable law, or otherwise relating in any way to the employment relationship.

*Id.* at 18-19.

To determine arbitrability under the appliable framework, the Court must first decide if there is a valid agreement. *See Kubala*, 830 F.3d at 201.

And "the initial question of whether there is a valid agreement to arbitrate usually concerns matters of contract formation." *Klein v. Nabors Drilling USA L.P.*,

710 F.3d 234, 237 (5th Cir. 2013) (citation omitted).

> In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. To achieve this objective, we must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument. A contract is unambiguous if it can be given a definite or certain legal meaning. On the other hand, if the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous, creating a fact issue on the parties' intent.

*J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003) (citations omitted).

Under this authority, there is no substantive argument that the Agreement and its arbitration provision are not valid.

And, because there is a valid agreement to arbitrate, the undersigned next considers whether the agreement includes a valid delegation clause.

While that does not appear to be the case here, the evidence (as set out above) reflects the broad scope of the agreement to arbitrate, a scope that easily includes Carroll's claims in this case.

And, insofar as Carroll may argue that a "federal statute or policy renders the claims nonarbitrable," *Polyflow*, 993 F.3d at 302, "[c]ourts in this Circuit have routinely held that plaintiffs' claims for violations of the ADA … are 'subject to mandatory arbitration,'" *Avalos v. Freemyer Indus. Pressure, LP*, No. 4:23-cv-583-P, 2023 WL 6883658, at *2 (N.D. Tex. Oct. 18, 2023) (collecting cases); *accord Santarino v. A.G. Edwards & Sons, Inc.*, 941 F. Supp. 609, 611-13 (N.D. Tex. 1996) (contracts to arbitrate ADA and FMLA claims enforceable); *see also Rojas v. TK Commc'ns, Inc.*,

87 F.3d 745, 748 (5th Cir. 1996) (same as Title VII claims).

Vivid's evidence further reflects that the arbitration agreement would be enforceable under Texas law. *See, e.g.*, *Robertson v. U-Haul Co. of Tex.*, No. 3:10-cv-2058-D, 2011 WL 444773, at *3-*4 (N.D. Tex. Feb. 7, 2011).

The Court should therefore grant Vivid's motion to compel arbitration and elect to retain this case and administratively close it pending the outcome of arbitration. *See, e.g.*, *Psara Energy, Ltd. v. Advantage Arrow Shipping, L.L.C.*, 946 F.3d 803, 807-08 (5th Cir. 2020).

And, as to Carroll's motion for leave to amend filed after Vivid moved to compel arbitration, *see* Dkt. No. 18, considering the proposed amended complaint [Dkt. No. 18-1], the motion "does not affect [the recommended] result because [Carroll's] proposed claims fall within the scope of the arbitration clause," and, so, "[t]he motion for leave to file an amended complaint [should be] denied as futile," *Lionheart Project Logistics, Inc. v. BBC Chartering USA, LLC*, Civ. A. No. 4:11-2076, 2011 WL 3739065, at *5 n.2 (S.D. Tex. Aug. 24, 2011).

**Recommendation**

The Court should grant Plaintiff Charlotte Carroll's motion to expedite [Dkt. No. 23]; grant Defendant Vivid Seats, LLC's motion to stay this case and compel arbitration of Carroll's claims [Dkt. No. 9]; deny Carroll's motion to strike the motion to compel [Dkt. No. 12]; deny as futile Carroll's motion for leave to amend the complaint [Dkt. No. 18]; and retain the case, refer it to arbitration, and administratively close it pending the outcome of arbitration.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: March 24, 2025

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE