IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHARLOTTE CARROLL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:25-cv-127-X-BN |
| | § | |
| VIVID SEATS, LLC, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Defendant Vivid Seats, LLC ("Vivid"), invoking the Court's federal question subject-matter jurisdiction, removed this lawsuit that Plaintiff Charlotte Carroll filed *pro se* in a Dallas County, Texas state court.

United States District Judge Brantley Starr referred the removed lawsuit to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference.

Once in federal court, Vivid moved under the Federal Arbitration Act ("FAA") to stay this case and compel arbitration of Carroll's claims, for discrimination, retaliation, and wrongful termination, in violation of the Americans with Disabilities Act and Texas law. And Carroll opposed Vivid's motion through various filings, including a motion to strike the motion to compel arbitration.

The undersigned recommended that Judge Starr stay this case and refer it to arbitration. *See* Dkt. No. 24. And he accepted that recommendation and entered an order on April 9, 2025 referring this case to arbitration and ordering the parties to

file joint status reports every six months, with the first due on October 9. *See* Dkt. No. 25.

Prior to that deadline, the parties filed dueling motions requesting the Court to appoint an arbitrator. Carroll moves the Court to appoint an out-of-state arbitrator, one "unaffiliated with the Texas judicial or legal system," based on her belief that there is "ongoing systemic judicial misconduct within the state." Dkt. No. 27. While Vivid, after setting out its version of the parties' unsuccessful efforts to agree on an arbitrator, requests that the Court exercise its authority to appoint an arbitrator on behalf of the parties under 9 U.S.C. § 5. *See* Dkt. Nos. 28-30.

The parties have briefed these motions, and Carroll has moved for a hearing and submitted other filings setting out her views on the courts in Texas. *See* Dkt. Nos. 31-38.

And, for the following reasons, the undersigned recommends that the Court deny the parties' motions.

## Discussion

"Under the FAA, jurisdiction by the courts to intervene into the arbitral process prior to issuance of an award is very limited." *Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co.*, 304 F.3d 476, 486 (5th Cir. 2002) (citing *Larry's United Super, Inc. v. Werries*, 253 F.3d 1083, 1085 (8th Cir. 2001)).

And "the FAA expressly favors the selection of arbitrators by parties rather than courts." *BP Expl. Libya Ltd. v. ExxonMobil Libya Ltd.*, 689 F.3d 481, 490 (5th Cir. 2012) (quoting *Shell Oil Co. v. CO2 Comm., Inc.*, 589 F.3d 1105, 1109 (10th Cir.

2009)).

"But Congress recognized that judicial intervention may be required in certain circumstances to move the parties to an arbitrable dispute out of the court and into arbitration as quickly and easily as possible." *Id.* (cleaned up).

And, so, "9 U.S.C. § 5 authorizes a court to intervene to select an arbitrator upon application of a party, in three instances: (1) if the arbitration agreement does not provide a method for selecting arbitrators; (2) if the arbitration agreement provides a method for selecting arbitrators but any party to the agreement has failed to follow that method; or (3) if there is a lapse in the naming of an arbitrator or arbitrators." *Id.* (cleaned up); *see, e.g., id.* at 494 ("[A]lthough the parties' agreement contained a method … to select arbitrators, that method has reached a mechanical breakdown. Thus, there was a lapse in the naming of arbitrators and any party was permitted to seek the district court's intervention under § 5. BP exercised that permission and requested the district court's intervention. The district court had authority to intervene under § 5 and it did not therefore err in doing so.").

The applicable agreement here provides a method: "the parties shall confer in good faith to attempt to agree upon a suitable arbitrator, and if unable to do so, they will select an arbitrator from the American Arbitration Association ('AAA')'s employment arbitration panel for the area." Dkt. No. 30-1 (appendix) at 12 (¶ 12(f)).

In its attempt to resolve the parties' current dispute, Vivid acknowledged this two-step method – for example, in its May 28, 2025 letter to Carroll. *See id.* at 111-12 (summarizing the parties' efforts to select an arbitrator thus far; providing a list

of proposed arbitrators; and concluding "please confirm your position of whether or not you are agreeable to selecting an arbitrator from the AAA panel for the area, should we not succeed in mutually selecting an arbitrator on our own").

And the record reflects that, while Carroll initially deferred to Vivid to select an arbitrator from its suggested list and that Vivid selected Carlos Lopez, a retired Texas state judge now in private practice, *see, e.g.*, *id.* at 125-26, 128, & 153, Carroll then rejected Lopez, *see, e.g.*, *id.* at 174 & 176.

But, after Carroll rejected Lopez, the parties then failed to explicitly take the second step required by their agreement – to "select an arbitrator from the [AAA's] employment arbitration panel for the area," *id.* at 12 – before filing motions with the Court under Section 5, *see id.* at 185-96.

And, while Vivid argues that Carroll "refused to select an arbitrator from a AAA panel, even absent AAA administration," Dkt. No. 29 at 3 (citing Dkt. No. 30-1 at 89-90), that's not exactly what the record reflects.

In response to Carroll stating that she doesn't "consent to AAA handling this process," Vivid's counsel explained that

> AAA considers the arbitrator list to be proprietary – but upon request they have to give us a panel list even if we don't agree to their rules or let them to administer the case. Do you want me to ask them to give us a panel list so we can review and discuss?

Dkt. No. 30-1 at 89. And Carroll replied that she "prefer[s] not to use AAA at all since I am not bound to them." *Id.*

And, so, because the record does not reflect that parties obtained the applicable AAA list and selected – or at least tried to select – an arbitrator from that list, as the

contract requires, the Court should not intervene at this time.

While this may seem like a frustrating conclusion considering the record here, the undersigned makes it keeping in mind that, although the FAA "illustrates congressional intent to facilitate arbitration when impasse in selection of arbitrators has occurred," it also "contemplates that the parties must follow the contractual procedure for arbitrator selection if such exists," such that "[c]ourts will not hesitate to vacate an award if arbitrators are not selected pursuant to the method specified in an arbitration agreement." *BP Expl. Libya Ltd.*, 689 F.3d at 491 (cleaned up).

And another case before Judge Starr illustrates why the parties must follow their contractual arbitrator-selection process fully before resorting to judicial intervention:

> [Gallagher] argues that the Court should intervene because the parties are "bickering over the selection process to the point of inhibiting arbitration from proceeding." However, under section 5, "[a] 'lapse' occurs when there is 'mechanical breakdown in the arbitrator selection process.' A mechanical breakdown occurs when the arbitration agreement cannot be enforced at all." That is not the case here. Here, it is undisputed that the arbitration clause provides a method for selecting arbitrators, and it provides a remedy for the situation presented in this case: "If either the Firm or the Client shall fail or refuse to select an arbitrator as required hereunder, then it waives its right to select an arbitrator and the arbitrator selected by the other shall decide all such disputes." Under the facts of this case, there is no "mechanical breakdown" or "impenetrable deadlock" that allows the court to exercise its "very limited jurisdiction ... to intervene in the arbitral process before an award." Indeed, the Fifth Circuit has explained that section 5 of the Federal Arbitration Act "illustrates congressional intent to 'facilitat[e] arbitration when impasse in selection' of arbitrators has occurred, but 'contemplates that the parties must follow the contractual procedure for arbitrator selection if such exists.'" A contractual procedure exists here, and the parties must follow it.

*Gallagher v. Vokey*, No. 3:19-cv-2196-X, 2022 WL 22256759, at *2 (N.D. Tex. June 9,

2022) (footnotes omitted).

So too here. Because a contractual procedural exists to resolve the parties' current impasse – selecting an arbitrator from the AAA's employment arbitration panel for the area – the Court should not intervene until the parties have exhausted their contractual remedies.

The Court should therefore deny Vivid's and Carroll's motions requesting intervention under Section 5 [Dkt. Nos. 27 & 28] and Carroll's motions requesting a hearing [Dkt. Nos. 31 & 38].

## Recommendation

The Court should deny Plaintiff Charlotte Carroll and Defendant Vivid Seats, LLC's motions requesting that the Court appoint an arbitrator [Dkt. Nos. 27 & 28] and deny Carroll's motions requesting a hearing [Dkt. Nos. 31 & 38].

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the

factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: September 22, 2025

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE